**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LUCY PINDER, JAIME EDMONDSON LONGORIA, and EVA PEPAJ, as assignees of VITO J. FRUGGIERO, INC., <br><br> and <br><br> ALISSA NOBRIGA and ALANA CAMPOS, as assignees of ZILLION CONCEPTS, LLC, <br><br> and <br><br> CLAUDIA SAMPEDRO, ALANA CAMPOS, CARMEN ELECTRA, MAYSA OUY, SABELLA SHAKE, and JORDAN CARVER, as assignees of GC BROTHERS ENTERTAINMENT, LLC, <br><br> *Plaintiffs*, <br><br> - against - <br><br> FIRST MERCURY INSURANCE COMPANY, <br><br> *Defendant*. | Index No. _____ <br><br><br> **COMPLAINT** <br><br> (Jury Trial Demanded) |

Plaintiffs LUCY PINDER, JAIME EDMONDSON LONGORIA, and EVA PEPAJ, as assignees of VITO J. FRUGGIERO, INC (the "Saints and Sinners Plaintiffs"), ALISSA NOBRIGA and ALANA CAMPOS, as assignees of ZILLION CONCEPTS, LLC (the "Rumors Plaintiffs"), and CLAUDIA SAMPEDRO, ALANA CAMPOS, CARMEN ELECTRA, MAYSA OUY, SABELLA SHAKE, and JORDAN CARVER, as assignees of GC BROTHERS ENTERTAINMENT, LLC (the "Palms Plaintiffs") (collectively, with the Saints and Sinners Plaintiffs and the Rumors Plaintiffs, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against defendant FIRST MERCURY INSURANCE COMPANY ("Defendant" or "First Mercury"), respectfully allege as follows:

**INTRODUCTION**

1

1. This is an action for breach of three identical insurance contracts, for declaratory relief, and to collect two judgements entered in favor of the Rumors Plaintiffs and the Palms Plaintiffs.

2. Plaintiffs are ten (10) well-known and, in some cases, world-renowned models who instituted three (3) separate lawsuits against the owners two gentlemen's club, Zillion Concepts, Inc. ("Zillion Concepts") (the owner of Rumors strip club, in Atlanta, Georgia), and GC Brothers Entertainment, LLC ("GC Brothers") (the owners of The Palms Gentlemen's Club, in Long Beach, California), and the owners of a swinger's club, Vito Fruggiero, Inc. ("Fruggiero") (the owner of Saints and Sinners, in New Jersey). Fruggiero, Zillion Concepts, and GC Brothers are referred to herein as the "Club Defendants."

3. The crux of each set of Plaintiffs allegations were the same: the Club Defendants had, intentionally or negligently, used each Plaintiff's image and likeness in advertisements for their club, without consent, and had done so to create the false impression with consumers each Plaintiff was a stripper at the subject club, promoted or endorsed same, or was otherwise associated or affiliated with same.

4. The Saints and Sinners Plaintiffs sued Fruggiero in the U.S. District Court for the District of New Jersey, *Acosta v. Highway Entertainment*, 18-cv-17725-MCA-LDW (the "Saints and Sinners Action").

5. The rumors Plaintiffs sued Zillion Concepts in the U.S. District Court for the Northern District of Georgia, *Nobriga v. Zillion Concepts, Inc.*, 21-cv-4120-CAP (the "Rumors Action").

6. The Palms Plaintiffs, through their assignee, sued GC Brothers in Los Angeles Superior Court, Case No. BC664916 (the "Palms Action").

7. Each of the Club Defendants were insured by First Mercury under essentially identical insurance policies.

8. Upon receiving the lawsuits, each of the Club Defendants timely tendered their defense of the underlying actions to First Mercury, and also sought indemnity from First Mercury.

9. In what appears to be a standard nationwide practice, First Mercury denied each of the Club Defendants' requests for defense and indemnification.

10. Following significant litigation, a judgment was entered in favor of the Rumors Plaintiffs (and others) in the amount of Three Hundred and Twenty-Five Thousand Dollars ($325,000) (the "Rumors Judgment").  *See* Exhibit A.

11. In connection with Rumors Judgment, Zillion Concepts assigned all claims it had against First Mercury to the Rumors Plaintiffs.

12. Following significant litigation, a judgment was entered in favor of the Palms Plaintiffs in the amount of Five Hundred and Eighty Thousand Dollars ($580,000) (the "Palms Judgment"). *See* Exhibit B.

13. In connection with Palms Judgment, GC Brothers assigned all claims it had against First Mercury to the Palms Plaintiffs' assignee, Timed Out, LLC ("Timed Out") who in turn assigned the Palms Judgment to the Palms Plaintiffs.

14. In addition, following significant litigation, Fruggiero assigned all claims it had against First Mercury to the Saints and Sinners Plaintiffs.

15. Plaintiffs now bring this direct action against First Mercury seeking compensation for the costs and expenses incurred in the underlying actions, a declaration that First Mercury owed the Club Defendants a defense and indemnity under the operative insurance policies, the

full amount of the Rumors Judgment in favor of the Rumors Plaintiffs, the full amount of the Palms Judgment in favor of the Palms Plaintiffs, costs and disbursements, and all accruing interest as set forth in more detail below.

## JURISDICTION & VENUE

16.     This action seeks relief by reason of First Mercury's failure and refusal to defend and indemnify its policy holders, the Club Defendants.

17.     This Court has general personal jurisdiction over First Mercury because First Mercury conducts extensive business in the State of New Jersey.

18.     This Court possesses specific personal jurisdiction over First Mercury because Fruggiero's insurance policy with First Mercury was entered into in New Jersey, and the transactions complained of herein between Fruggiero and First Mercury took place within the State of New Jersey.

19.     This Court has subject matter jurisdiction in this action through diversity of the parties under 28 U.S.C. § 1332.  The sum in controversy exceeds $75,000, exclusive of interest and costs.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred within this judicial district.

## PARTIES

21.     Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States (though none reside in New Jersey) and whose images were misappropriated by Fruggiero in New Jersey and Zillion Concepts in Georgia.

22.      Plaintiff LUCY PINDER is a well-known professional model and a resident of the United Kingdom.

23. Plaintiff JAIME EDMONDSON LONGORIA is a well-known professional model and a resident of Maricopa County, Arizona.

24. Plaintiff EVA PEPAJ is a well-known professional model and a resident of Los Angeles County, California.

25. ALYSSA NORBRIGA is a well-known professional model and a resident of Los Angeles County, California.

26. Plaintiff ALANA CAMPOS a/k/a ALANA SOUZA is a well-known professional model and a resident of Clark County, Nevada.

27. Plaintiff CLAUDIA SAMPEDRO is a well-known professional model and a resident of Miami-Dade County, Florida.

28. Plaintiff CARMEN ELECTRA is a well-known professional model and a resident of Los Angeles County, California.

29. Plaintiff MAYSA OUY is a well-known professional model and a resident of Los Angeles County, California.

30. Plaintiff SABELLA SHAKE is a well-known professional model and a resident of Miami-Dade County, Florida.

31. Plaintiff JORDAN CARVER is a well-known professional model and a resident of Germany.

32. Upon information and belief, defendant First Mercury is a corporation formed and operating under the laws of the state of Michigan, is authorized to do business in the State of New Jersey and does business in New Jersey.

**FACTUAL ALLEGATIONS**

*Fruggiero's First Mercury Policy*

33. In 2012, Fruggiero secured and maintained a policy of commercial general liability insurance policy (the "Saints and Sinners CGL Policy") from First Mercury.

34. First Mercury issued the Saints and Sinners CGL Policy, identified as Policy No. NJ-CGL-0000003454-01, to Fruggiero for a policy period from January 1, 2012 through January 1, 2013.

35. This policy was renewed from January 1, 2013 to January 1, 2014, and again from January 1, 2014 to January 1, 2015, under Policy Nos. NJ-CGL-0000003454-02 and NJ-CGL-0000003454-03, respectively.

36. The policy premium on the Saints and Sinners CGL Policy was a substantial sum of money, which was paid by Fruggiero.

37. Fruggiero has met every condition required in the Saints and Sinners CGL Policy. As a result, said policy remained in full force and effect with respect to Saints and Sinners during periods of time relevant to this action.

38. The Saints and Sinners CGL Policy includes coverage for "Personal and Advertising Injury" among its terms.

39. Pursuant to the terms of the Saints and Sinners CGL Policy, the definition of "Personal and Advertising Injury" includes, in part, injury arising out of "(d) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

40. Pursuant to the terms of the Saints and Sinners CGL Policy, the definition of "Personal and Advertising Injury" includes, in part, "(e) Oral or written publication, in any manner, of material that violates a person's right of privacy."

41. Pursuant to the terms of the Saints and Sinners CGL Policy, the definition of "Personal and Advertising Injury" includes, in part, "(f) The use of another's advertising idea in your 'advertisement.'"

42. Pursuant to the Saints and Sinners CGL Policy, the definition of "Advertisement" means a:

> [N]otice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
>
> a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
>
> b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

1. None of the exclusions stated in the Saints and Sinners CGL Policy preclude First Mercury from being obligated to provide a defense and coverage to Saints and Sinners Action.

2. In or around 2018, the Saints and Sinners Plaintiffs commenced the Saints and Sinners Action by filing a complaint against Fruggiero.

3. All of the claims alleged by the Saints and Sinners Plaintiffs against Fruggiero are based on factual allegations that pertain to Saints and Sinners advertising activities and advertisements.

4. Following the Saints and Sinners Plaintiffs filing of the Complaint against Fruggiero, which asserted several claims covered by the Saints and Sinners CGL Policy, Fruggiero tendered the Complaint to its insurance carrier, First Mercury.

5. The claim was tendered by Fruggiero to First Mercury, and Fruggiero provided First Mercury with timely notice of the Saints and Sinners Action.

6. First Mercury denied defense and coverage to Fruggiero in a denial letter on the

grounds that the Saints and Sinners Action fell within several of the listed exclusions in the Saints and Sinners CGL Policy.

7. First Mercury's conclusion that the factual allegations in the Saints and Sinners Action are subject to exclusion from "personal and advertising injury" is arbitrary and contrary to the facts of the complaint in the Saints and Sinners Action and well-settled law.

8. First Mercury's denial of a defense to Fruggiero is without merit.

9. The Saints and Sinners Plaintiffs specifically asserted a demand for monetary damages as a direct consequence of Fruggiero's advertising activities that fall within covered offenses listed in the Saints and Sinners CGL Policy.

10. The Saints and Sinners Plaintiffs' allegations against Fruggiero trigger coverage within the provisions of the Saints and Sinners CGL Policy.

11. Such allegations relate directly to the alleged disparagement of, and violation of the right of privacy of, the Saints and Sinners Plaintiffs in Saints and Sinners advertisements and in connection with Saints and Sinners advertising and marketing activities which the Saints and Sinners Plaintiffs allege took place on Saints and Sinners website and social media accounts.

12. Such allegations and others by the Saints and Sinners Plaintiffs in the Saints and Sinners Action trigger First Mercury's duty to defend and duty to indemnify Fruggiero.

13. Considering First Mercury's failure, in breach of their agreement with Fruggiero, to defend the Saints and Sinners Action, in or around December 2022, Fruggiero entered into a settlement agreement with the Saints and Sinners Plaintiffs pursuant to which it assigned all rights it had in the Saints and Sinners CGL Policy to the Saints and Sinners Plaintiffs.

*Zillion Concepts' First Mercury Policy*

14. In 2015, Zillion Concepts secured and maintained a policy of commercial general liability insurance policy (the "Zillion Concepts CGL Policy") from First Mercury.

15. First Mercury issued the Zillion Concepts CGL Policy, identified as Policy No. FMEV101053 for a policy period March 5, 2015 through March 5, 2016.

16. The policy premium on the Zillion Concepts CGL Policy issued by First Mercury was a substantial sum of money, which was paid by Zillion Concepts.

17. Zillion Concepts met every condition required in the Zillion Concepts CGL Policy. As a result, said policy remained in full force and effect with respect to Zillion Concepts during periods of time relevant to this action.

18. The Zillion Concepts CGL Policy issued by First Mercury includes coverage for "Personal and Advertising Injury" among its terms.

19. Pursuant to the terms of the Zillion Concepts CGL Policy, the definition of "Personal and Advertising Injury" includes, in part, injury arising out of "(d) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

20. Pursuant to the terms of the Zillion Concepts CGL Policy, the definition of "Personal and Advertising Injury" includes, in part, "(e) Oral or written publication, in any manner, of material that violates a person's right of privacy."

21. Pursuant to the terms of the Zillion Concepts CGL Policy, the definition of "Personal and Advertising Injury" includes, in part, "(f) The use of another's advertising idea in your 'advertisement.'"

22. Pursuant to the Zillion Concepts CGL Policy, the definition of "Advertisement" means a:

[N]otice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

1. None of the exclusions stated in the Zillion Concepts CGL Policy preclude First Mercury from being obligated to provide a defense and coverage to Rumors Action.

2. In or around 2021, the Rumors Plaintiffs commenced the Rumors Action by filing a complaint against Zillion Concepts.

3. All of the claims alleged by the Rumors Plaintiffs against Zillion Concepts are based on factual allegations that pertain to Zillion Concepts' advertising activities and advertisements.

4. Following the Rumors Plaintiffs filing of the Complaint against Zillion Concepts, which asserted several claims covered by the Zillion Concepts CGL Policy, Zillion Concepts tendered the Complaint to its insurance carrier, First Mercury.

5. The claim was tendered by Zillion Concepts to First Mercury, and Zillion Concepts provided First Mercury with timely notice of the Rumors Action.

6. First Mercury denied defense and coverage to Zillion Concepts in a denial letter (the "Zillion Concepts Denial Letter") on the grounds that the Rumors Action fell within several of the listed exclusions in the Zillion Concepts CGL Policy.

7. First Mercury's conclusion that the factual allegations in the Rumors Action are subject to exclusion from "personal and advertising injury" is arbitrary and contrary to the facts as set forth in the complaint in the Rumors Action and well-settled law.

8. First Mercury's denial of a defense to Zillion Concepts is without merit.

9. The Rumors Plaintiffs specifically asserted a demand for monetary damages as a direct consequence of Zillion Concepts advertising activities that fall within covered offenses listed in the Zillion Concepts CGL Policy.

10. The Rumors Plaintiffs' allegations against Zillion Concepts trigger coverage within the provisions of the Zillion Concepts CGL Policy.

11. Such allegations relate directly to the alleged disparagement of, and violation of the right of privacy of, the Rumors Plaintiffs in Rumors advertisements and in connection with Rumors advertising and marketing activities which the Rumors Plaintiffs allege took place on Zillion Concepts website and social media accounts.

12. Such allegations and others by the Rumors Plaintiffs trigger First Mercury's duty to defend and duty to indemnify Zillion Concepts.

13. Considering First Mercury's failure, in breach of their agreement with Zillion Concepts, to defend the Rumors Action, in or around December 2022, Zillion Concepts entered into a consent judgment with Rumors Plaintiffs and others in the amount of $325,000.

14. This amount was based on what a jury might reasonably award the Rumors Plaintiffs, and the other plaintiffs in that lawsuit, including the amount of attorneys' fees and costs a Court may reasonably award the Rumors Plaintiffs.

15. Zillion Concepts thereafter assigned all of its rights under the First Mercury Policy to the Rumors Plaintiffs.

***GC Brothers' First Mercury Policy***

**16.** In 2016, GC Brothers secured and maintained a policy of commercial general liability insurance policy (the "GC Brothers CGL Policy") from First Mercury.

17. First Mercury issued the GC Brothers Concepts CGL Policy, identified as Policy No. FMEV101402 for a policy period April 27, 2015 through April 27, 2016. The Policy was renewed as Policy No. FMEV103902, for a policy period April 27, 2016 through April 27, 2017.

18. The policy premium on the GC Brothers CGL Policy was a substantial sum of money, which was paid by GC Brothers.

19. GC Brothers met every condition required in the GC Brothers CGL Policy. As a result, said policy remained in full force and effect with respect to Zillion Concepts during periods of time relevant to this action.

20. The GC Brothers CGL Policy includes coverage for "Personal and Advertising Injury" among its terms.

21. Pursuant to the terms of the GC Brothers CGL Policy, the definition of "Personal and Advertising Injury" includes, in part, injury arising out of "(d) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

22. Pursuant to the terms of the GC Brothers CGL Policy, the definition of "Personal and Advertising Injury" includes, in part, "(e) Oral or written publication, in any manner, of material that violates a person's right of privacy."

23. Pursuant to the terms of the GC Brothers CGL Policy, the definition of "Personal and Advertising Injury" includes, in part, "(f) The use of another's advertising idea in your 'advertisement.'"

24. Pursuant to the GC Brothers CGL Policy, the definition of "Advertisement" means a:

[N]otice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

1. None of the exclusions stated in the GC Brothers CGL Policy preclude First Mercury from being obligated to provide a defense and coverage to Palms Action.

2. In or around 2021, the Palms Plaintiffs, through their assignee, Timed Out, commenced the Palms Action by filing a complaint against GC Brothers.

3. All of the claims alleged by the Palms Plaintiffs against GC Brothers are based on factual allegations that pertain to Palms advertising activities and advertisements.

4. Following the Palms Plaintiffs filing of the Complaint against GC Brothers, which asserted several claims covered by the GC Brothers CGL Policy, GC Brothers tendered the Complaint to its insurance carrier, First Mercury.

5. The claim was tendered by GC Brothers to First Mercury, and GC Brothers provided First Mercury with timely notice of the Palms Action.

6. First Mercury denied defense and coverage to GC Brothers in a denial letter (the "GC Brothers Denial Letter") on the grounds that the Palms Action fell within several of the listed exclusions in the GC Brothers CGL Policy.

7. First Mercury's conclusion that the factual allegations in the Palms Action are subject to exclusion from "personal and advertising injury" is arbitrary and contrary to the facts of the complaint in the Palms Action and well-settled law.

8. First Mercury's denial of a defense to GC Brothers is without merit.

9. The Palms Plaintiffs specifically asserted a demand for monetary damages as a direct consequence of GC Brothers advertising activities that fall within covered offenses listed in the GC Brothers CGL Policy.

10. The Palms Plaintiffs' allegations against GC Brothers clearly trigger coverage within the provisions of the GC Brothers CGL Policy.

11. Such allegations relate directly to the alleged disparagement of, and violation of the right of privacy of, the Palms Plaintiffs in Palms advertisements and in connection with Palms advertising and marketing activities which the Palms Plaintiffs allege took place on Palms website and social media accounts.

12. Such allegations and others by the Palms Plaintiffs in the Palms Action trigger First Mercury's duty to defend and duty to indemnify GC Brothers.

13. Considering First Mercury's failure, in breach of its agreement with GC Brothers, to defend the Palms Action, in or around July 2021, GC Brothers entered into a consent judgment with Timed Out in the amount of $580,000.

14. This amount was based on what a jury might reasonably award the Palms Plaintiffs, including the amount of attorneys' fees and costs a Court may reasonably award the Palms Plaintiffs.

15. In connection with the Palms Judgment, GC Brothers assigned all of its rights under the First Mercury Policy to Timed Out, which in turn assigned all of its rights to the Palms Judgment to the Palms Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

16. Plaintiffs repeat and incorporate by reference all allegations heretofore set forth herein.

17. Pursuant to the terms of the Saints and Sinners CGL Policy, the Zillion Concepts CGL Policy, and the GC Brothers CBL Policy, First Mercury was obligated to defend and indemnify the Club Defendants in the lawsuits detailed above.

18. One or more claim asserted by the plaintiffs against the Club Defendants in the underlying lawsuits constitute "Advertising Injury" under the definition of "Personal and Advertising Injury" contained in the Club Defendants' CGL Policies.

19. Each of the Club Defendants made a proper demand for coverage, defense, and compensation.

20. Each of the Club Defendants submitted timely notice to First Mercury.

21. First Mercury improperly refused to cover, defend and compensate any of the Club Defendants in connection with their respective litigations.

22. As a result, First Mercury has breached the terms of the Saints and Sinners CGL Policy, the Zillion Concepts CGL Policy, and the GC Brothers CGL Policy.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment)**

**23.** Plaintiffs repeat and incorporate by reference all allegations heretofore set forth herein.

24. An actual controversy arose between each of the Club Defendants and First Mercury concerning whether First Mercury had to defend and has a duty to indemnify the Club Defendants in the underlying lawsuits as described herein.

25. By virtue of the foregoing, Plaintiffs seek a judicial determination concerning this issue.

26. A judicial determination is necessary and appropriate at this time so that the parties may proceed in accordance with their respective obligations and rights as determined by

the Court.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully prays for judgment against First Mercury as follows:

A. With respect to Count I, for damages in an amount to be proven at trial;

B. With respect to Count II, for a judgment declaring that First Mercury has an obligation to defend and indemnify the Club Defendants in the underlying lawsuits.

C. With respect to Counts I and II, for pre-judgment interest on all awards of damages; and

D. For such other and further relief as this Court deems just and proper.

Dated:   May 16, 2023

**SACCHETTA & BALDINO**

By:   /s/ Gerald B. Baldino, III
      Gerald B. Baldino, III, Esquire
      NJ Bar ID: 295012019
      Sacchetta & Baldino
      24 South Broad Street
      Woodbury, NJ 08096
      T: 856-845-4400
      F: 856-845-0400
      gbaldino@sbattorney.com

**THE CASAS LAW FIRM, P.C.**

By:   /s/ John V. Golaszewski
      John V. Golaszewski, Esq.
      1740 Broadway, 17th Floor
      New York, New York
      T: 855.267.4457
      F: 855.220.9626

*Pro Hac Vice Application Forthcoming*